```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

                                  :
BIG LOTS STORES, INC.
                                  :
    v.                            :  Civil Action No. DKC 2006-3249
                                  :
GIANT OF MARYLAND LLC
                                  :
```

**MEMORANDUM OPINION**

Plaintiff Big Lots Stores, Inc. ("Big Lots") has moved for summary judgment as to liability in this breach of contract action. For the reasons that follow, the motion will be granted in part and denied in part.

**Background**

Big Lots filed a single count complaint for breach of contract against Defendant Giant of Maryland, LLC ("Giant"), concerning the lease of property in Reisterstown, Maryland. Giant initially leased the premises from Turnpike Associates in 1979, with a term extending to November 30, 2005. This Prime Lease had an option to extend for two separate ten year periods, and a final period of five years, on the condition that it provide Turnpike with written notice of its intention to exercise the option at least 180 days before the expiration of the term.

Giant occupied the premises until May 2003 when it sublet the premises to Big Lots Stores, Inc. The Initial Term of the Sublease was to last until January 31, 2009, with separate option periods of six, ten and five years.

In order to allow Big Lots to sublease the premises until 2009, Giant had to exercise its first option under the prime lease. The Sublease thus provided in section 3.1:

> The initial term of this Sublease shall be for a period which shall begin on the Sublease Term Commencement Date and which shall end at 11:59 p.m. on January 31, 2009 (the "Initial Term"). Sublandlord acknowledges that the Initial Term of this Sublease shall extend through Sublandlord's first option period provided in the Prime Lease. Sublandlord hereby warrants that it shall timely exercise its first option period, but notwithstanding such, Subtenant's Initial Term shall end on the date specified herein. Notwithstanding the foregoing this Sublease shall terminate on the thirtieth (30th) day prior to the termination of the Prime Lease.

(Paper 1, Ex. B, at 2). Giant, however, failed to exercise its first option timely and Big Lots was forced to vacate the premises on January 31, 2006. Big Lots contends that Giant's failure to exercise its first option, and consequent termination of the Sublease, entitles it to damages. Plaintiff has filed a motion for summary judgment on the issue of liability, seeking a determination that Giant breached the Sublease and is liable for damages equal to the difference between the contract rent and market rent for the term of the Sublease.

**Analysis**

It will be helpful to begin with a recent reiteration of the principles of contract interpretation under Maryland law:

> Maryland adheres to the principle of the objective interpretation of contracts.[7] *See Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006); *Tomran v. Passano*, 391 Md. 1, 13, 891 A.2d 336, 344 (2006); *Kasten Constr.*

2

*v. Rod Enterprises*, 268 Md. 318, 328, 301 A.2d 12, 17-18 (1973). If the language of a contract is unambiguous, we give effect to its plain meaning and do not contemplate what the parties may have subjectively intended by certain terms at the time of formation.[8] *See Dennis v. Retirement System*, 390 Md. 639, 656-57, 890 A.2d 737, 747 (2006); *Rourke v. Amchem*, 384 Md. 329, 354, 863 A.2d 926, 941 (2004). Thus, our search to determine the meaning of a contract is focused on the four corners of the agreement. *Walton v. Mariner Health*, 391 Md. 643, 660, 894 A.2d 584, 594 (2006).

Under the objective theory of contracts, we look at what a reasonably prudent person in the same position would have understood as to the meaning of the agreement. *Id.* Ambiguity arises if, to a reasonable person, the language used is susceptible of more than one meaning or is of doubtful meaning. *See United Services v. Riley*, 393 Md. 55, 80, 899 A.2d 819, 833 (2006). As we have previously explained:

> A court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

*General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985). When determining intent, the "customary,

3

ordinary, and accepted meaning" of the language is used. *Walton*, 391 Md. at 660, 894 A.2d at 594. In addition, Maryland utilizes the following rule of construction when interpreting contracts:

> A recognized rule of construction in ascertaining the true meaning of a contract is that the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.

*Sagner v. Glenangus Farms*, 234 Md. 156, 167, 198 A.2d 277, 283 (1964).

---

[7] The interpretation of a contract, including the question of whether the language of a contract is ambiguous, is a question of law subject to de novo review. *See Towson v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004).

[8] The United States Court of Appeals for the Fourth Circuit described the challenge that a court faces when granting summary judgment on a matter of contract interpretation in *Washington Metropolitan Area Transit Authority v. Potomac Investment Properties, Incorporated*, 476 F.3d 231 (4th Cir. 2007). The Fourth Circuit stated as follows:

> A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation. Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if susceptible to two reasonable interpretations. The first step for

4

> a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis. If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.
>
> Therefore, summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence.

*Id.* at 235 (internal citations omitted). *Cochran v. Norkunas*, 398 Md. 1, 16-18 (Md. 2007).

There is no dispute that the parties entered into a Sublease under which Big Lots would lease the premises from Giant for an Initial Term expiring January 31, 2009. There is also no dispute

5

that Giant agreed to exercise its first option period timely under its Prime Lease with the owner, but that it failed to do so and the Prime Lease thereby expired on November 30, 2005.  Big Lots obviously contends that Giant breached the Sublease by failing to exercise the first option under the Prime Lease and that the contract provides that Giant shall be liable to it for damages.[1] Giant, on the other hand, while acknowledging that it failed to exercise the option as promised in the contract, contends that the Sublease in effect renders the promise illusory and insulates it from damages.  It points to a provision in the Sublease, Section 16, that reads as follows:

> Notwithstanding anything contained herein to the contrary, the existence of this Sublease is dependent and conditioned upon the existence of the Prime Lease and in the event of the cancellation or termination of the Prime Lease for any reason, this Sublease shall thereupon be terminated without the need for further action and without liability to the Sublandlord, except in the event of a default of Sublandlord under the Prime Lease causing such termination.

The Sublease uses certain terms that are important to resolution of this issue: "expire" or "expiration", "terminate" or

---

[1] Big Lots relies on a portion of Section 9.2:

> Sublandlord shall be in default of this Sublease, and liable for all damages for breach of contract in the event the Sublease is terminated due to any action by the Sublandlord which directly causes the termination of the Prime Sublease or Prime Lease.

6

"termination", and "cancellation". It will also be necessary to interpret the word "action" in order to apply this contract. Neither the Sublease nor the Prime Lease explicitly define any of these terms.

The term "expire" normally means the end of a contract term. On the other hand, a "termination" "usually means an action taken to end the contract before the end of its anticipated term." *Lockheed Aircraft Service Company v. Rice*, 956 F.2d 1174 (Fed. Cir. 1992). Similarly, in *Perfection Oil Co. v. Saam*, 264 F.2d 835, 838 (8th Cir. 1959), the court observed:

> Other courts have recognized this distinction between 'expiration' and 'termination.' In *Kramer v. Amberg*, 15 Daly 205, 4 N.Y.S. 613 [(N.Y.Ct.C.P. 1889)], the court states:
>
>> '* * * the uniform construction of the courts has been that where the statute speaks of the 'expiration of the lease,' the meaning is that the lease has come to an end either by effluxion of time or its own limitation. The ending of the lease by the exercise of the landlord's option, after condition broken, is the termination, not the expiration, of the lease. * * *'
>
> See also: *Haberle v. R.F.C.*, D.C.D.C., 104 F.Supp. 636 [(1951)]; *Grant v. Aerodraulics Co.*, 91 Cal.App.2d 68, 204 P.2d 683 [(1949)]; *F. & M. Drilling Co. v. M. & T. Oil Co.*, 192 Okl. 372, 137 P.2d 575 [(1943)].

For the most part, both the Sublease and the Prime Lease consistently use "terminate" and "expire" in line with these definitions. For example, section 1.2 of the Sublease refers to

the "expiration or termination of the Prime Lease."  Section 3.2 also uses the term "expiration" to refer to the end of the term of the Sublandlord's first option period in the first paragraph and to refer to the end of the Initial Term or an Option Term in the second paragraph.  The term "termination" is used to refer to a party's option to end the lease prior to its expected term, as in Section 5.2, the "Go Dark" provision.  The Prime Lease also uses "expiration" to refer to the term or option term in Article 12, and "termination" to refer to other events causing the lease to end.[2] Furthermore, in the context of these documents, "cancellation" of the Prime Lease means some method of unnaturally abrogating the contract, whether termed annul or abrogate. *See Merriam Webster OnLine Dictionary*, http://mw1.merriam-webster.com/dictionary ("1a: to destroy the force, effectiveness, or validity of : annul").  The term "cancel" is used in the Prime Lease, sometimes in conjunction with the term "terminate," to describe situations when at least one party has a right to bring the contract to an end before its normal expiration.  See, e.g., Article 3 at p. 4, Article 10(g) at p. 22, Article 11(b) at p. 23, and Article 17 at p. 31.  It is not entirely clear how the Prime Lease or the Sublease differentiate a cancellation from a termination of the Prime Lease, but whatever

---

[2] In one instance in both leases, discussing the surrender of the premises at the end of the lease, the term "terminate" is used more broadly to refer to a time when a lease term might expire. Prime Lease Article 10(c); Sublease Section 26.

cancellation means in this context, it is different than "expiration."  Finally, according to *Black's Law Dictionary* (8th ed. 2004), the word "action" means "1. [t]he process of doing something; conduct or behavior."  It is a term broad enough generally to encompass a failure to act.  With those definitions in mind, it is a fairly simple matter to apply the contract to the sequence of events.

The Sublease contemplated that the Initial Term would extend to January 31, 2009, into the first option period under the Prime Lease.  Because Giant could not sublease the premises unless it had the right to them under the Prime Lease, Section 1.2, provided:

> Notwithstanding any provision herein to the contrary, this Sublease shall automatically terminate upon the expiration or termination of the Prime Lease for any reason.

The parties seem to agree, and the court finds, that this section means that the Sublease "terminated" (*i.e.*, ended before its anticipated term) when the Prime Lease "expired" (*i.e.*, came to an end at the end of the contract term when Giant failed to exercise its option.)  As a result, Big Lots contends that liability is established by the last paragraph of Section 9.2:

> Sublandlord shall be in default of this Sublease, and liable for all damages for breach of contract, in the event the Sublease is terminated due to any action by the Sublandlord which directly causes the termination of the Prime Sublease or Prime Lease.

9

Giant contends, however, that Section 16 absolves it from any liability. That section reads:

> Notwithstanding anything contained herein to the contrary, the existence of this Sublease is dependent and conditioned upon the existence of the Prime Lease and in the event of the cancellation or termination of the Prime Lease for any reason, this Sublease shall thereupon be terminated without the need for further action and without liability to Sublandlord, except in the event of a default of Sublandlord under the Prime Lease causing such termination.

The problem with Giant's assertion is that Section 16 does not apply. It is triggered only if the Prime Lease is "cancelled" or "terminated," neither of which occurred. Rather, the Prime Lease "expired." Here, the Sublease was terminated (*i.e.*, ended before its anticipated term) due to the conduct or behavior of Giant in not exercising its option under the Prime Lease, and this action directly caused the termination of the Sublease, due to the expiration of the Prime Lease. In short, because the Prime Lease merely "expired", and was not "cancelled" or "terminated", Section 16 is inapplicable. Rather, the expiration of the Prime Lease resulted in the termination of the Sublease under Section 1.2, which occurred because of the action of Giant in failing to fulfill its warranty set forth Section 3.1, triggering Big Lots' rights under Section 9.2 for Giant's default. It follows that Big Lots is entitled to partial summary judgment to the effect that Giant breached the Sublease.

At the hearing, Giant stated that it would then be liable for damages for the first term of the Sublease, namely until January 31, 2009, but contends that there are disputes of fact as to whether damages continue, as Big Lots claims, to the full extent of the options periods, or until 2030.  As to that issue, there is ongoing discovery and there may be disputes of fact.  That aspect of the motion for summary judgment will be denied.  Accordingly, Big Lots' motion for partial summary judgment will be granted with respect to Giant's liability for breach of the Sublease, and the court concludes that Giant breached the Sublease by failing to exercise its option to extend the Prime Lease, and is liable to Big Lots for any damages resulting from this breach.  The motion by Big Lots will otherwise be denied.

                                   _____/s/_____
                                   DEBORAH K. CHASANOW
                                   United States District Judge